## Preston Huffman and John Nickerson v. The People, etc., use of John Sterling, Adm'r de Bonis Non, with the Will Annexed, etc.

1. SURETIES—*Held According to the Strict Terms of the Contract.*— Sureties are only held according to the strict terms of the contract they sign, and their liabilities thereon are to be measured by the terms of the contract, to be construed in accordance with the laws governing such contracts, in force when the contract was made; but their liability is not to be extended to persons or things not clearly within the express terms thereof, as understood by the parties when they made the contract.

2. SAME—*Liability on Executor's Bond Where Real Estate is to Be Sold Under a Will.*—Where an executor executes the bond required by law before entering upon his duties, his sureties have a right to expect that the court will require the executor to give the other bond provided for by the statute to cover the real estate to be sold under the provision of the will; and when they sign the first bond they contract only to indemnify the persons interested in the personal estate for which such bond is given, and will not be liable on it for the proceeds of real estate sold by such executor under the provisions of the will.

**Debt**, on executor's bond. Trial in the Circuit Court of McLean County; the Hon. JOHN H. MOFFETT, Judge, presiding. Finding and judgment for plaintiffs. Error by defendant. Heard in this court at the May term, 1898. Reversed and remanded with instructions. Opinion filed October 5, 1898.

SAMPLE & MORRISSEY, attorneys for plaintiffs in error.

Where it becomes necessary to sell the real estate of any intestate for the payment of debts against his estate under the provisions of this act, or in case real estate is to be sold under any provision of a will, the court shall require the executor to give further and additional bond, * * * in a sum double the value of the estate of the decedent sought to be sold, is mandatory. O'Rear v. Crum, 135 Ill. 294.

And that, under the rule of construction of *pari materia*, a bond is just as mandatorily required to be given where the will provides for the sale of real estate, as where the sale of real estate is required to pay debts on the order of court. Ill. Watch Case Co. v. Pearson, 140 Ill. 424; C. & N. Ry. Co. v. Chicago, 148 Ill. 144; Mette v. Feltgen, 148 Ill.

359; L. S. & M. S. Ry. Co. v. Chicago, 148 Ill. 510; see also Frink v. King, 3 Scam. 144; Bruce v. Schuyler, 4 Gilm. 221.

The fact the executor has reported the proceeds of the sale of such real estate does not create a liability on the personal property bond. Robinson v. Millard, 133 Mass. 236; Brandt on Sureties, Sec. 583; Com. v. Gilson, 8 Watts (Pa.), 214; Clay v. Hart, 7 Dana (Ky.), 11.

The statute mandatorily provides, when an executor is required by will to sell real estate, the court shall require him to give a further and additional bond in double the value of such real estate, the same as when real estate is required to be sold to pay debts. Sec. 7, Chap. 3; Sec. 23, Chap 3.

The liability for sale of real estate, therefore, rests on such additional bond, where sale was not made to pay debts or legacies. Robinson v. Millard, 133 Mass. 236; Madison Co. v. Johnston, 51 Iowa, 152; Bunce v. Bunce, 65 Iowa, 106.

Such additional bond is not subsidiary, but is independent of the bond given to secure the personal estate. Robinson v. Millard, 133 Mass. 236; Bunce v. Bunce, 65 Iowa, 106; Morris v. Cooper, 35 Kan. 156; Warwick v. State, 5 Ind. 350; Henderson v. Cooper, 4 Nevada, 429.

The requirement of such additional bond shows the sureties on personal property bond did not contemplate and did not agree to be liable for proceeds of real estate. Madison Co. v. Johnston, 51 Iowa, 152; Bunce v. Bunce, 65 Iowa, 106.

And the fact that the additional bond was not given does not affect the question, or create a liability where such liability would not have existed on first bond, if such second bond had been given. Bunce v. Bunce, 65 Iowa, 106.

Where a separate bond is required to be given by a guardian on the sale of a ward's real estate, it has often been held that the sureties on the general bond are not liable for the proceeds of the sale of such real estate. Warwick v. State, 5 Ind. 350; Henderson v. Cooper, 4 Nevada, 429; Morris v. Cooper, 35 Kans. 156.

WELTY & STERLING, attorneys for defendant in error.

Sureties on an executor's bond are liable for all his acts, or failure to act in that capacity, and also for the performance of all duties imposed upon him by the will as trustee. While we do not admit that the executor was acting as trustee at the time he failed in the performance of the duties imposed on him by this will, we insist that it is wholly immaterial in what capacity he was acting. His sureties were liable for his failure to perform the duties imposed on him by the will and the law. He is held as executor until he qualifies as trustee. Walker v. Potilla, 7 Lea (Tenn.), 449; Foster, Adm'x, v. Wise, Adm'r, 46 Ohio St. 20; White v. Ditson, 140 Mass. 351; Cluff v. Day, 124 N. Y. 195; Prior, Ex., v. Talbot et al., 10 Cush. 1; Farrar, Trustee, v. McCue, 89 N. Y. 139; Clark v. Denton, 36 N. J. Eq. 419; Beach on Trusts, Secs. 365, 366.

Mr. Justice Burroughs delivered the opinion of the court.

This was an action of debt, brought by the appellee in the Circuit Court of McLean County, against the appellants, to recover, upon the official bond given by the executor of the will of said deceased, the balance of $3,938.68, shown to have been in his hands on January 24, 1894, by his reports made to the County Court of McLean County, where said will was admitted to probate, and said executor gave the bond and qualified as such executor.

By stipulation, entered into by the parties, all proper counts and pleas were considered as being in and issue joined thereon, and by agreement the case was tried by the court without a jury, upon a state of facts set out in writing, from which it appeared that Isaac Wilson died testate June 29, 1897, in McLean county, Illinois, leaving a last will and testament, as follows, viz.:

" I, Isaac Wilson, of the town of Martin, in the county of McLean, and State of Illinois, declare this to be my last will and testament:

First. I request and direct that my executor shall sell the land owned by me and described as follows: The north one-half (½) of section thirty-four (34), town No. one hundred (100), north of range forty-four (44), west of the

fifth (5) principal meridian, in Lyon county, Iowa, and invest the proceeds in land in McLean county, Illinois, to the best of his judgment, for the benefit of my wife, Louisa Wilson, during her life and so long as she shall remain a widow; and, after her decease or remarriage, the same to be equally divided between the surviving heirs of my body.

Second. I request and direct that my executor shall collect all notes and accounts due or owing to me of whatever kind or nature, and the amount so collected, together with the money I may leave at my death, amounting to the sum of four thousand dollars ($4,000), and invest the said moneys in land, in McLean county, Illinois, as his best judgment may direct, for the use and benefit of my wife during her life, and so long as she shall remain a widow, and after her death or remarriage the same is to be equally divided between the heirs of my body.

Third. I give and bequeath all the rest, residue, and remainder of my personal property of what nature or kind soever to my said wife, Louisa Wilson.

Fourth. I hereby appoint Joseph Wilson the sole executor of this will, revoking all former wills by me made.

In testimony whereof, 1 have hereunto set my hand and seal this 19th day of May, A. D. 1897.

ISAAC WILSON. [SEAL.]"

This will was admitted to probate September 28, 1897, and Joseph Wilson qualified as executor thereof October 25, 1897, by taking the oath prescribed by statute and giving the bond sued on, as such executor, which is as follows, viz.:

KNOW ALL MEN BY THESE PRESENTS, That we, Joseph Wilson, Preston Huffman, John Nickerson and M. S. Morris, of the county of McLean, and State of Illinois, are held and firmly bound unto the people of the State of Illinois, in the penal sum of eight thousand dollars ($8,000), current money of the United States, which payment, well and truly to be made and performed, we, and each of us, bind ourselves, our heirs, executors and administrators, jointly, severally and firmly by these presents.

Witness our hands and seals this 4th day of October, A. D. 1897.

The condition of the above obligation is such, That if the above bounden Joseph Wilson, executor of the last will and testament of Isaac Wilson, deceased, do make, or cause to be made, a true and perfect inventory of all and singular, the goods and chattels, rights and credits, lands, tenements and hereditaments, and the rents and profits issuing out of the same, of the said deceased, which have or shall come to the hands, possession or knowledge of the said Joseph Wilson, or into the possession of any other person for him, and the same so made, do exhibit in the County Court for the said county of McLean, as required by law, and also make and render a fair and just account of his actings and doings as such executor to said court, when thereunto lawfully required, and to well and truly fulfill the duties enjoined upon him in and by the said will, and shall, moreover, pay and deliver to the persons entitled thereto, all the legacies and bequests contained in the said will, so far as the estate of the said testator will thereunto extend, according to the value thereof, as the law shall charge him, and shall in general do all other acts which may from time to time be required of him by law, then this obligation to be void, otherwise to remain in full force and virtue.

| | |
|---|---|
| Joseph Wilson. | [seal.] |
| Preston Huffman. | [seal.] |
| John Nickerson. | [seal.] |
| M. S. Morris. | [seal.] |

The inventory filed in the County Court by the executor showed the real estate belonging to said deceased, and being the Iowa land described in the will, was valued at $5,000, and all the personal property of the deceased valued at $3,627.61. The three reports filed by the executor in the County Court, and the facts agreed upon by the parties, show he received as such executor, from the sale of the real estate...................................$4,480.00
From the rent thereof....................... 247.82
From interest on said proceeds, 2 years, 6 months 672.00

Total from real estate.....................$5,399.82

He also received from proceeds of the personal
property as shown by his said reports..........$3,301.03
The household furniture, etc...................· 300.00

    Total amount received.......›............$9,000.85
    He paid out as follows, to wit:
To widow, household furniture, etc.............$  300.00
To widow, her award as allowed................ 1,424.00
To widow, besides award...................... 1,349.65
Amount paid for homestead at Colfax.......... 1,498.04
Amount paid for debts and costs of administration 1,152.90
Amount of executor's commission, at 3 per cent on
    $4,480.00........›........................... 134.40

    Total................. ................$5,858.99
Leaving balance in hands of executor, January 24,
    1894... ............·....................$3,141.86
To which executor in his last report adds, excess
    paid widow over award and income from real
    estate..................................... 796.83

    Total balance due from executor to said estate,
        on January 24, 1894.....................$3,938.69
Which reports are signed and sworn to by the executor.

The executor died September 17, 1894, and the said M.
S. Morris, the last named surety on the bond of the execu-
tor, died October 29, 1890, leaving the said Preston Huff-
man and John Nickerson the only surviving signers of said
bond.

On May 29, 1897, John Sterling was duly appointed and
qualified as administrator *de bonis non*, with the will
annexed, of the estate of Isaac Wilson, deceased. The said
executor, nor any one for him, has ever paid any part of
the said $3,938.69 to any one legally entitled to the same,
nor invested any part thereof in real estate, as directed by
said will.

From this stipulation and said facts the defendant in
error claimed that he was entitled to recover from the

plaintiffs in error, as sureties on said bond, said sum of $3,938.69 and legal interest from January 24, 1894; while the plaintiffs in error denied their liability for said sum, or any part thereof.

The Circuit Court found for the defendant in error, $8,000 debt, $4,230.83 damages, and gave judgment on the findings against the plaintiffs in error.

The plaintiffs in error have prosecuted a writ of error from this court to the Circuit Court to reverse that judgment, and insist that the Circuit Court erred, (1) in finding for the defendant in error, as the bond sued on covered personal property and not real estate, and the amount assessed as damages was the proceeds of real estate and not of personal property; and (2) in holding that the defendant in error could recover as administrator *de bonis non.* As the will directed the proceeds of the Iowa land to be reinvested in real estate, it could only be recovered by those to whom the real estate would have gone under the terms of the will, had such proceeds been so reinvested.

The defendant in error insists that the terms of the bond do cover the proceeds of the sale of the Iowa land, and that from the admitted facts the plaintiffs in error are estopped to deny that the executor owes the estate said $3,938.69, as reported by him to the County Court.

The questions thus presented are somewhat difficult to solve correctly, as courts of last resort in the several States are not harmonious in the way they have settled them.

The bond sued on in this case is in the terms prescribed by Sec. 7, Chap. 3, Starr & Curtis' Statutes, which provides that "All executors hereafter appointed, unless the testator shall otherwise direct in the will, * * * shall, before entering upon their duties, enter into bond with good and sufficient security, to be approved by the County Court, * * * in a sum double the value of the personal estate, and payable to the people of the State of Illinois, for the use of the parties interested, in the following form, to wit: (Then follows the form, which is the same as the bond sued on), which said bond shall be signed and sealed by the said executor * * * and his sureties, and filed in the office

of the clerk of the County Court, * * * and spread upon the records; and that where it becomes necessary to sell the real estate of an intestate, for the payment of debts against his estate, under the provisions of this act, or in case real estate is to be sold under any provisions of a will, the court shall require the executor * * * to give further and additional bond, * * * with good and sufficient security, to be approved by the court, in a sum double the value of the real estate of the deceased sought to be sold, and payable to the people of the State of Illinois, for the use of the parties interested, in the form above prescribed."

It will be observed that by said section the executor is required, before he enters upon the duties enjoined by the will (unless the testator otherwise directs in the will), to enter into bond in double the value of the personal estate, and when real estate is to be sold under any provision of a will, the court shall require the executor to give further and additional bond, with good and sufficient security, in a sum double the value of the real estate of the deceased sought to be sold. From this section and the terms of the bond we think it is fair to presume the sureties on the first bond required by the said section would contemplate being held only to secure the personal estate of the deceased, and would have a right to expect that the County Court would require the executor to give the other bond provided for therein to cover the real estate provided to be sold by said will; and when they signed the first bond they contracted only to indemnify the persons interested in the personal estate for which the bond they signed was given.

It is a familiar doctrine that sureties are only held according to the strict terms of the contract they signed off, and their liabilities thereon are to be measured by the terms of the contract, to be construed in accordance with the laws governing such contracts in force when the contract was made, and their liability is not to be extended to persons or things not clearly within the express terms thereof, as understood by the parties when they made the contract.

Interpreting this bond in the light of this section of the

statutes, and reading the same into it, we are satisfied the plaintiffs in error ought not to be held liable for any part of the proceeds of the sale of the Iowa land. Jones v. Hobson, 2 Randolph (Va.), 497; Reynolds v. Hall, 1 Scam. 35; Board of Supervisors of Milwaukee Co. v. Ehlers, 45 Wis. 281, and cases therein cited. Besides, without giving the further and additional bond required by said section 7, it may be questionable whether the executor, by virtue of his appointment by the County Court, was in law authorized to sell the Iowa land, for notwithstanding the will directed the executor to sell that land, the statute expressly directed that the County Court shall require the executor to give a further and additional bond, with security in double the value of the real estate to be sold in such case, and no such further and additional bond is shown to have been given, and if there was one given, then it is upon that bond the parties interested in the proceeds of that real estate can unquestionably look for relief from the delinquencies of the executor in handling the real estate proceeds, as shown by the admitted facts.

The defendant in error also contends that the admitted facts do not disclose the amounts paid out by the executor were the proceeds of the personal or real estate; hence it is not known that the amount shown as a balance on hand by the executor's last report represented proceeds of real or personal property.

In view of this contention we have examined the reports of the executor made to the County Court and embodied in the stipulated facts and made a part of the same, and find that they show the following items paid by the executor which were properly payable, under the law and the will, from the personal estate, viz.:

| | |
|---|---|
| The household goods to widow...................... | $ 300.00 |
| The widow's award duly allowed her........... | 1,424.00 |
| The debts of the deceased and the expenses of administering the personal estate.............. | 1,152.90 |
| Making a total of......................... | $2,876.90 |

The same report shows the executor received of
the personal estate........................ $3,601.03
Which shows a balance of personal estate not
properly accounted for'of.................. $ 724.13

It is true the executor's said reports show he paid out for
homestead at Colfax and improvements thereon the sum of
$1,498.04, but neither his reports nor the other admitted
facts show whether this homestead at Colfax is in McLean
county, Illinois, or where it is, or that he took the title
thereto for the use specified in the will. In order to relieve
the plaintiffs in error from liability on this bond for the
proper disposition of all the personal estate shown by the
said reports to have been received by the executor, the bur-
den of showing that he did dispose of all of it in accordance
with the provisions of the will, and as the law directs,
rested upon them; and while from the admitted facts it does
appear that the executor properly accounted for the said
sum of $2,876.90 of the $3,601.03 personal estate received
by him, it fails to show a proper accounting for by him of
any more thereof, and further shows that he has failed to
properly account for $3,938.69 received by him from the
real and personal estate of said deceased.

We recognize that there is much force in the contention
of the defendant in error that the plaintiffs in error are
estopped to deny that the said executor did in fact have in
his hands the sum of $3,938.69 in money belonging to said
estate, because in his report of January 24, 1894, he so
stated; yet it seems to us that inasmuch as by all the reports
of the executor, and the admitted facts, it conclusively
appears that at least all of said sum but $724.13 thereof,
is made up of the proceeds of the Iowa land, for which the
plaintiffs in error are not liable on this bond. We think the
admission of the executor in his report of that amount of
money in his hands belonging to said estate, being thus
accompanied with those other facts, relieves it of a con-
clusive admission which works an estoppel against the plaint-
iffs in error as sureties on this bond. Lyman v. Conkey, 1
Met. (Mass.) 317; Mattoon v. Cowing, 13 Gray (Mass.), 387;

Robinson v. Millard, 133 Mass. 236, and Brandt on Surety-ship, Sec. 583.

The plaintiffs in error, we think, are liable on this bond to the defendant in error for the said sum of $724.13, being the balance of the personal estate of Isaac Wilson, deceased, not properly accounted for by the said executor, together with lawful interest thereon from January 24, 1894, by virtue of section 37 of said chapter 3, which provides: "When a sole  *  *  *  executor dies without having fully administered the estate, if there is personal property not administered,  *  *  *  or is anything remaining to be performed in the execution of the will, the County Court shall grant letters of administration, with the will annexed, *  *  *  to some suitable person to administer the estate of the deceased not already administered, and the sureties on the bond of such deceased administrator shall be liable on the same to such subsequent administrator  *  *  *  for any mismanagement of the estate committed to his care; and such subsequent administrator may have and maintain all necessary and proper actions against the sureties of such former executor  *  *  *  for all such goods, chattels, debts and credits as shall have come to his possession and are withheld or may have been wasted, embezzled or misapplied, and no satisfaction made for the same."  *  *  *

We are therefore of the opinion that the Circuit Court did commit reversible error in assessing the damages in this case in an amount in excess of said sum of $724.13, and lawful interest thereon from January 24, 1894, for which error we reverse its judgment herein, and remand the case, with instructions to that court to find for the defendant in error his debt, $8,000, his damages (a sum amounting to $724.13, and lawful interest thereon from January 24, 1894, to date of finding), and to give judgment on such findings for the defendant in error against the plaintiffs in error, the judgment to be satisfied upon payment of the said damages and costs.   Reversed and remanded, with instructions.